| Bank of N.Y. Mellon v Garcon |
|:---:|
| 2025 NY Slip Op 32201(U) |
| June 23, 2025 |
| Supreme Court, Rockland County |
| Docket Number: Index No. 033501/2015 |
| Judge: David Fried |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

INDEX NO. 033501/2015

RECEIVED NYSCEF: 06/23/2025

To commence the statutory time period for appeals as of right (CPLR §5513 [a]), you are advised to serve a copy of this Order, with notice of entry, upon all parties.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND
-----------------------------------------------------------------------X

THE BANK OF NEW YORK MELLON, AS
TRUSTEE FOR CWABS, INC. ASSET-BACKED
CERTIFICATES, SERIES 2003-BC-5,

                    Plaintiff,

      -against-

JOCELYNE GARCON A/K/A JOCELYNE G.
CANTAVE; CITIBANK (SOUTH DAKOTA)
N.A.; CHASE BANK (USA) N.A.; MARIE
GARCON,

                    Defendants.
-----------------------------------------------------------------------X

**DECISION & ORDER**

Index No. 033501/2015
Motion Sequence No. 3

**HON. DAVID FRIED, A.J.S.C.**

The papers filed electronically via NYSCEF numbered 89 through and including 108 ("Motion") were read and considered herein. Upon such reading and consideration, the Motion is disposed as follows:

**BACKGROUND**

This action commenced on July 28, 2015 to foreclose on a Mortgage encumbering the parcel of real property located at 44 Demarest Avenue, Village of West Haverstraw, County of Rockland, State of New York 10993 (Section 20.19, Block 8, Lot 94) ("Subject Property") and was disposed by the entry of a Judgment of Foreclosure and Sale on January 29, 2019 ("Judgment"). The Judgment directed that "if the Referee does not conduct the sale within 90 days of the date of the judgment, in accordance with CPLR 2004, the time fixed by RPAPL §1351(1) is extended for the Referee to conduct the sale as soon as reasonably practicable" (NYSCEF Doc. No. 75, pg. 4).

The foreclosure sale originally scheduled for April 25, 2019 in accordance with the Judgment could not proceed due to an automatic stay arising from Defendant Jocelyne Garcon's ("Defendant") filing of a Chapter 13 bankruptcy petition on April 24, 2019. Although the Bankruptcy Court lifted the stay on June 25, 2020 upon Plaintiff's motion, Plaintiff was unable to conduct a foreclosure sale until

[* 1]

January 15, 2022 due to the issuance of a statewide commercial eviction and foreclosure moratorium by Executive Order of the New York State Governor and its subsequent extension by several other Executive Orders and the enactment of the COVID-19 Emergency Eviction and Foreclosure Prevention Act. Upon the expiration of the foreclosure moratorium, Plaintiff scheduled a foreclosure sale for May 26, 2022.

On May 18, 2022, Defendant, seeking to prevent the foreclosure sale from proceeding, contacted Plaintiff's loan servicer, Nationstar Mortgage LLC d/b/a Mr. Cooper ("Mr. Cooper"), by telephone and purports to have made an informal request for the arrangement of a short payoff or short sale without supplying Plaintiff with a written application or supporting documentation. In order to review Defendant's request and avoid dual tracking, Mr. Cooper canceled the foreclosure sale scheduled for May 26, 2022. On June 8, 2022, Plaintiff informed Defendant that it could not proceed with a short payoff as the proposed payoff funds were in the name of Defendant's children rather than Defendant. Plaintiff thereafter scheduled a new foreclosure sale for October 13, 2022, which was never conducted due to the filing of yet another bankruptcy petition by Defendant on October 12, 2022, resulting in an automatic stay of the proceeding up until January 26, 2023. The parties subsequently engaged in loss mitigation in the Bankruptcy Court for two years, which yielded no settlement and prompted dismissal of the second Bankruptcy petition on January 17, 2025. Plaintiff thereafter scheduled a new foreclosure sale for May 13, 2025.

Defendant now brings this Motion by way of Order to Show Cause for an Order (i) enjoining the May 13, 2025 foreclosure sale until Plaintiff obtains an Order pursuant to CPLR §2004 extending its time to conduct a foreclosure sale in accordance with the Judgment and (ii) awarding Defendant attorneys fees for the preparation of the within Motion due to Plaintiff's frivolous conduct in not obtaining an Order extending its time to comply with the Judgment. The Court signed Defendant's proposed Order to Show Cause on April 30, 2025. By stipulation of the parties so ordered by the Court (NYSCEF Document No. 103), the Motion return date was adjourned to June 5, 2025 and the foreclosure sale was adjourned to June 12, 2025. Due to a clerical error, the Court was not informed that the Motion was fully submitted on June 5, 2025 and thus could not render a decision prior to the June 12, 2025 foreclosure sale. Thus, on June 11, 2025, the Court stayed the foreclosure sale pending the issuance of this Decision & Order. Plaintiff opposes the Motion.

**PARTIES' CONTENTIONS**

In support of her Motion, Defendant contends that Plaintiff has not complied with this Court's Judgment in that it has not conducted the foreclosure sale of the subject property within ninety days of entry thereof or as soon as reasonably practicable. Defendant concedes that Plaintiff was unable to conduct a foreclosure sale between the entry of the Judgment and January 15, 2022 because of the imposition of Defendant's first bankruptcy filing and the COVID-19 foreclosure moratorium. Defendant takes issue with Mr. Cooper's cancellation of the May 26, 2022 foreclosure sale, which she contends was not necessitated by the law but rather unilaterally undertaken by Plaintiff upon

[* 2]

2 of 12

Defendant's informal request for a short payoff.

Defendant asserts that 12 CFR §1024.41 did not necessitate a loss mitigation hold and cancellation of the May 26, 2022 foreclosure sale as a result of Defendant's informal request for a short payoff for the following reasons: first, under 12 CFR §1024.41(c)(1) a loss mitigation hold is not required where the borrower's loss mitigation application is incomplete or submitted within thirty-seven days before the scheduled foreclosure sale; and second, the loan servicer is not required to evaluate a request for loss mitigation where it previously evaluated an application but the borrower remained delinquent between the submission of the previous application and the new application, as Defendant alleges is the case herein. In effect, Defendant contends, because Plaintiff was under no legal obligation to evaluate Defendant's informal request for a short payoff, its cancelation of the May 26, 2022 foreclosure sale under the pretense of a loss mitigation hold was unjustified, and Plaintiff did not "conduct the sale as soon as reasonably practicable" as provided for by the Judgment.

Defendant further contends that Plaintiff engaged in frivolous conduct under 22 NYCRR §130.1.1 by failing to cancel the May 13, 2025 foreclosure sale after being informed by Defendant that the previous foreclosure sale scheduled for May 26, 2022 was the date most reasonably practicable to conduct the sale. Defendant maintains that Plaintiff was adequately informed of the meritless nature of proceeding with the May 13, 2025 foreclosure sale without obtaining an extension of time after Defendant explained same in her letter to the Court (NYSCEF Document No. 87), at two Court appearances, and in an email to Plaintiff's counsel. Nevertheless, Defendant argues, Plaintiff insisted on proceeding with the May 13, 2025 foreclosure sale, which occasioned the filing of the instant Motion. Defendant thus seeks an award of attorney's fees incurred in the drafting of the instant Motion.

In opposition to Defendant's Motion, Plaintiff firstly contends that Defendant failed to timely serve moving papers on Plaintiff's attorney via email as directed of it by the Order to Show Cause, which it contends is a jurisdictional defect requiring denial of the Motion.

Plaintiff does not address whether the scheduling of the May 13, 2025 foreclosure sale conforms with the directives of this Court's Judgment. Rather, Plaintiff contends that Defendant maintains an untenable position by contesting the propriety of the May 13, 2025 foreclosure sale while having previously delayed this over nine-year-old foreclosure action at every turn. Plaintiff also submits that public policy militates against any further extension of time, as plaintiffs to foreclosure actions incur expenses throughout the pendency of the action while defendants-borrowers live rent free and oftentimes collect rent throughout the pendency of the action, thereby stymieing defendants' incentive to settle, prolonging litigation, congesting court dockets, and adversely impacting the ability of prospective borrowers to secure loans.

With regard to the branch of Defendant's Motion for sanctions against it, Plaintiff asserts that there is no legal basis for the granting of such relief, reasoning as follows: first, that the commencement of this action and scheduling of the sale following entry of the Judgment were reasonably supported by

legal precedent; second, that Plaintiff has not prosecuted this action with the intent to prolong or delay resolution of this matter or to harass or maliciously injure Defendant; and third, that Plaintiff has not made any false material factual statements throughout this action. Plaintiff also notes that it did not engage in dual tracking, that Defendant did not apply for loss mitigation, that the loan was not eligible for a short sale, and that Defendant was not entitled to CFPB protections.

In reply, Defendant insists that she complied with the service directives of this Court's Order to Show Cause and annexes copies of emails sent to Defendant's counsel, Christopher McKenna and Christal Printz. In response to Plaintiff's opposition on the merits, Defendant avers that Plaintiff largely ignores the relevant factual issue herein, that is, whether Plaintiff's cancellation of the May 26, 2022 foreclosure sale and scheduling of the foreclosure sale for May 13, 2025 complied with this Court's Judgment. Defendant reiterates her position that her informal request for a short payoff did not justify cancellation of the May 26, 2022 foreclosure sale or otherwise constitute good cause for a delay in the proceedings.

## DISCUSSION

As an initial matter, it bears noting that Defendant complied with the service directives contained within the Court's Order to Show Cause and filed proof thereof in her reply papers (NYSCEF Doc. No. 106).

The facts herein are not disputed by the parties. RPAPL §1351(1) provides, in relevant part, that a judgment of sale "shall direct that the mortgaged premises ... be sold ... within ninety days of the date of the judgment." However, "the court may extend the time fixed by any statute, rule or order for doing any act, upon such terms as may be just and upon good cause shown" (CPLR §2004). On January 29, 2019, the Court (Marx, J.) directed Plaintiff to conduct a foreclosure sale within ninety days thereof and if not conducted within said timeframe, as soon as reasonably practicable (*see* NYSCEF Doc. No. 75, pg. 4). Plaintiff did not conduct a foreclosure sale within ninety days of January 29, 2019 and has not obtained an Order granting an extension of time to comply with the Judgment. Additionally, neither Plaintiff nor Defendant contest that it was not reasonably practicable for the foreclosure sale to be conducted between April 24, 2019 (the filing of Defendant's first Chapter 13 Bankruptcy Petition) and January 15, 2022 (the expiration of the statewide foreclosure mortarium). As such, the issue before the Court is whether Plaintiff's cancelation of the subsequently scheduled foreclosure sale on May 26, 2022 ostensibly under the pretense of a loss mitigation hold was warranted, and whether May 13, 2025 was the next reasonably practicable date for conducting the foreclosure sale.

A determination of reasonableness, including the reasonableness of the delay in complying with a judgment of foreclosure and sale, generally rests within the sound discretion of the Court (*see e.g., Bank of America v. Cord*, 214 AD3d 934, 936 [2d Dept 2023]).

Defendant did not trigger a loss mitigation hold under 12 CFR §1024.41(g) by making an informal request for a short payoff or short sale on May 18, 2022, some eight days before the May 26, 2022 foreclosure sale; the application was neither complete, nor submitted more than thirty-seven days before a foreclosure sale (*see* 12 CFR §1024.41[g]). Thus, Plaintiff prematurely cancelled the May 26, 2022 foreclosure sale when it was under no legal obligation to do so, and Plaintiff has not presented a reason for why it was not reasonably practicable for it to proceed with the May 26, 2022 sale in light of the absence of a loss mitigation hold. Accordingly, because Plaintiff did not conduct the May 26, 2022 sale when it otherwise could have, Plaintiff did not conduct the sale as soon as reasonably practicable as required by the Judgment.

Notwithstanding the foregoing, the Court is receptive to Plaintiff's contentions regarding the costs resulting from delays to foreclosure actions. Accordingly, considering that the vast majority of the six-year delay in conducting a foreclosure sale herein since the entry of Judgment was through no fault of the actions of Plaintiff or its loan servicer, but rather a result of bankruptcy stays, a statewide foreclosure moratorium, and settlement negotiations in the Bankruptcy Court, and considering that Defendant was not prejudiced by said delays, Plaintiff's time to conduct a foreclosure sale of the Subject Property is extended *sua sponte* pursuant to CPLR §2004 by ninety days of the date hereof (*see Nationstar Mortgage, LLC v. Dunn*, 230 AD3d 1327, 1329 [2d Dept 2024] [extending plaintiff's time to hold a foreclosure sale sua sponte under CPLR §2004 given that the delay was largely attributable to a pending appeal and the COVID-19 pandemic, and the delay did not prejudice defendant]).

The branch of Defendant's Motion for an award of sanctions against Plaintiff pursuant to 22 NYCRR §130.1.1 for engaging in frivolous conduct by not canceling the May 13, 2025 foreclosure sale is denied. Contrary to Defendant's position, Plaintiff did not maintain a meritless position herein. To reiterate, the question before the Court herein was whether May 13, 2025 was the next reasonably practicable date for conducting the foreclosure sale. As Defendant acknowledged in her moving papers, "the determination of what is reasonable rests within the sound discretion of the trial court" (NYSCEF Doc. No. 90, ¶17). Although the Court rested its determination of said issue, *supra,* on the legal restraints to dual tracking stemming from 12 CFR §1024.41, the Court was amenable to Plaintiff presenting a non-legal excuse for canceling the May 22, 2022 foreclosure sale, which it would have considered in its calculus had Plaintiff presented such an excuse. In other words, whether May 13, 2025 was the next reasonably practicable date for conducting the foreclosure sale was not a purely legal question, and Plaintiff's refusal to cancel the May 13, 2025 foreclosure sale at Defendant's request was not completely without merit in law. Therefore, Plaintiff did not engage in frivolous conduct.

In light of the foregoing, it is hereby

**ORDERED**, that Defendant Jocelyne Garcon A/K/A Jocelyne G. Cantave's Motion is GRANTED to the extent provided herein; and it is further

**ORDERED, ADJUDGED AND DECREED**, that pursuant to §1351(1) of the Real Property

[* 5]

Actions and Proceedings Law, the Subject Property shall be sold under the direction of the referee hereinbefore appointed, in one parcel, at public auction, within 90 days of the date of this Order, and said Referee shall give public notice of the time and place of sale in accordance with RPAPL §231 in The Journal News at the Rockland County Courthouse, located at 1 South Main Street, New City, NY 10956; provided, however, that:

(1) Plaintiff / the Referee shall schedule and conduct such sale in strict compliance with the Auction Rules for the Ninth Judicial District attached hereto as **Schedule A**, any superseding judicial or executive order generally regulating the time, place or manner of foreclosure auctions, and all public health rules and regulations then in effect;

(2) The 90-day sale deadline hereunder shall be deemed superseded: (a) to the extent of any judicial or executive order that becomes effective hereafter during such 90-day sale period that extends the sale deadline; and/or (b) if the Referee attests that it would be impracticable to conduct the sale within 90 days hereof in compliance with the Auction Rules, in which case the Referee may conduct the sale within 150 days hereof without further Order of this Court pursuant to CPLR §2004 or otherwise, and any such sale shall be deemed timely for purposes hereof; and it is further

**ORDERED, ADJUDGED AND DECREED**, that this matter is scheduled for a status conference on <u>October 17, 2025 at 9:15AM</u>. The purpose of this conference is to determine whether the foreclosure sale has occurred as ordered, the outcome of such sale and to make such further orders as the Court deems necessary. Appearances by the parties and appointed Referee are required UNLESS: (1) a completed Foreclosure Action Surplus Monies Form has been uploaded and received by the undersigned one week prior to this date or (2) the Referee notifies the Court in writing one week prior to this date that the sale is not going to occur prior to this date and requests a new date based upon when he/she believes the sale will occur; and it is further

**ORDERED, ADJUDGED AND DECREED**, to the extent not addressed herein, all other portions of this Court's Order Confirming the Referee Report and Judgment of Foreclosure and Sale entered in this action, and schedules attached thereto, remain in full force and effect; and it is further

**ORDERED, ADJUDGED AND DECREED**, that within 10 days of the date of entry hereof, Plaintiff shall serve a copy of this Order, with notice of entry, upon the owner of the equity of redemption, any tenants named in the action, the Referee appointed herein, and any other party entitled to notice, and file with the Court a suitable affirmation of service.

[ SIGNATURE PAGE FOLLOWS ]

The foregoing constitutes the Decision & Order of this Court.

Dated:  New City, New York
       June 23, 2025

E N T E R:

_____
**HON. DAVID FRIED, A.J.S.C.**
STATE OF NEW YORK
COUNTY OF ROCKLAND

[* 7]

SCHEDULE "A"

# NEW AUCTION RULES FOR THE NINTH JUDICIAL DISTRICT

## EFFECTIVE July 1, 2024

**GENERAL FORECLOSURES**

1. The foreclosure rules currently in place will remain in effect. Please note the following rules with respect to auctions. These new auction rules shall be attached to all Judgments of Foreclosure and Sale issued by the court.

**NOTICE TO BIDDERS**

2. Auctions will be conducted in the following locations:

Dutchess County: Auctions will be held in the rear lobby of the Dutchess County Courthouse. Foreclosure paperwork may be completed in the rear lobby when the sale is completed.

Orange County: Auctions will be held in the lobby area of Floor 2, Div. 3 of the Orange County Courthouse. Room 3212 is available if additional space is needed. Foreclosure paperwork may be completed in Conference Room 3209 when the sale is completed.

Putnam County: Auctions will take place in the jury assembly room located in the Putnam County Courthouse. Foreclosure paperwork may be completed in the jury lounge room following the sale.

Rockland County: Auctions will take place in the Rockland County Courthouse in the landing above the vestibule between Courtrooms One and Two. Pursuant to Administrative Order 54/24, remote bidding has been authorized for Rockland County. However, all auctions, even remote-eligible auctions, will still take place in-person, at the location designated herein, and will still be conducted and supervised by the Referee.

In a remote bidding eligible auction, where remote bidding has been requested by plaintiff in the proposed Judgment of Foreclosure and Sale-REMOTE BIDDING [See template at https://www.nycourts.gov/forms/foreclosure/pdfs/JFS-with-Remote-Bidding.docx] and authorized by the court in the Judgment of Foreclosure and Sale, plaintiff may retain the services of a remote bidding technology provider for those properties scheduled to be auctioned on or after July 1, 2024.

Remote bidding will be available for properties where the foreclosing party has engaged such a remote bidding technology provider to provide marketing and auction services. In those cases where a remote bidding provider has been retained, a representative thereof will appear at the courthouse for the auction and shall be permitted to use an electronic tablet to collect, verify and relay bids

in real time during the auction.

Where a plaintiff seeks to retain a remote bidding technology provider, the proposed Judgment of Foreclosure and Sale shall make the necessary references to remote bidding, as set forth more fully in the UCS' Judgment of Foreclosure and Sale for Remote Bidding template, [which can be found at https://www.nycourts.gov/forms/foreclosure/pdfs/JFS-with-Remote-Bidding.docx] or as otherwise ordered by the court. No remote-bidding eligible auction may take place unless authorized by the Judgment of Foreclosure and Sale.

Once the sale concludes, the successful bidder and Referee may gather in Conference Room 206 on the second floor next to the Chief Clerk's Office to complete the foreclosure paperwork. If the highest bid comes from a remote bidder, the remote bidding provider shall facilitate the winning bidder's execution of all required documentation.

<u>Westchester County</u>: Auctions will be held in the lobby area located on the first floor of the Courthouse. A courtroom will be made available if additional space is needed. Foreclosure paperwork may be completed in the same location following the sale.

3. There shall be a maximum of five auctions daily: three (3) in the morning and two (2) in the afternoon. The first shall commence at 9:30 am, the second at 10:30am, the third at 11:30am, the fourth at 2:30pm and the fifth at 3:30pm. (The number of auctions per day and the time of day may differ by County).

4. It is the responsibility of the bidder to acquaint himself/herself with the property, any encumbrances thereon, and the Terms of the Sale before placing a bid and to be certain that adequate funds are available to make good the bid.

5. All bidders must have proof of identification and will be required to state their names and addresses on the record at the time the bid is made.

6. A successful bidder must have in his/her possession at the time of the bid the full 10% of the sum bid, in cash or certified bank check to be made payable to the Referee.

In Rockland County only, if the highest bid comes from a remote bidder in a remote-eligible auction, the Referee shall defer collection of a deposit as long as the remote bidding provider provides proof of sufficient funds thereof. This proof of funds may be in the form of a winning remote bidder's escrow account statement as of the date of the auction. The deposit MUST then be transferred into the Referee's trust account within one (1) business day of the conclusion of the auction. The Referee shall make available their wire transfer information to the remote bidding provider for this purpose.

7. No auction will be deemed final until the full 10% deposit has been paid to the

Referee and the Terms of Sale Documents have been signed, which must be done in the courthouse immediately following the auction, except as set forth above for a winning remote bidder in a remote-eligible auction.

8. After the auction is completed, the Referee and successful bidder, if needed, shall be allowed to use designated court space to complete the necessary paperwork.

9. If a successful bidder fails to immediately pay the deposit or in the event of a winning remote bidder in a remote-eligible auction, within one (1) business day of the conclusion of the auction, and sign the Terms of Sale documents, the property shall be returned to auction immediately.

## NOTICE TO REFEREES

10. Auctions shall be scheduled by appointment only utilizing the following applicable email address:

Dutchess County: DutchessAuctions@NYCourts.gov

Orange County: OrangeAuctions@NYCourts.gov

Putnam County: PutnamAuctions@NYCourts.gov

Rockland County: RocklandAuctions@NYCourts.gov

If remote bidding is authorized by the court, when seeking to schedule a remote-bidding eligible auction (via email to RocklandAuctions@NYCourts.gov), the Referee and/or plaintiff's representative must notify the court of their intention to retain a remote bidding technology provider.

Westchester County: WestchesterAuctions@NYCourts.gov

11. The Referee shall not schedule any foreclosure sale without prior approval from the Clerk's Office. All auction sales shall be scheduled through the clerk's office. The auction calendar shall be published on OCA/the Court's website. **The Clerk's Office shall be solely responsible for scheduling, and the Referee shall coordinate the date and time of the auction with the Clerk's Office. If the auction is canceled for whatever reason, the Referee shall promptly notify the Clerk's Office.**

12. The Referee and all interested parties, including a representative from a remote bidding provider in a remote-eligible auction in Rockland County, must be present at the designated auction location indicated in the Order of the Court on the published date promptly at the scheduled time. At the completion of the auction, the Referee shall direct all attendees at that auction to vacate the auction location promptly upon confirmation of the sale.

13. The Referee shall conspicuously post the Terms of Sale, including any known

3

encumbrances, in a designated area of the auction location at least 30 minutes before the auction commences.

14. The Referee shall accept either (1) cash, or (2) certified bank check made payable to the Referee. In the case of a remote-eligible auction where the winning bidder is a remote bidder, a deposit MUST be transferred into the Referee's trust account within one (1) business day of the conclusion of the auction.

15. At the conclusion of the auction, the Referee shall notify the Clerk's Office of the outcome of the sale.

## SURPLUS FUNDS

16. If there is a potential for Surplus Funds, the Referee shall notify the clerk who shall enter the following information into UCMS (Foreclosure Screen): the sales price, amount awarded in the final Judgment of Foreclosure, and upset price.

17. When the sales price exceeds the greater of the judgment amount or upset price, the clerk will provide the Referee conducting the sale a Surplus Money Form to be completed.

18. The form shall include the following information: a case caption, name, address and telephone number of the Referee, the plaintiff's representative and the purchaser, a judgment amount, and the upset and sale price. The form must be signed by the Referee, plaintiff's representative and purchaser of the foreclosed property.

19. The Referee will complete the form at the auction, and deliver the signed form to the court clerk, who will subsequently provide it to the County Clerk.

20. All cases with a potential for Surplus Funds will be calendared for a control date before the IAS Judge or his/her designee, no later than six months after the auction (this is a non-appearance part). On the control date, the Clerk will consult the County Clerk Minutes. If Surplus Funds have been deposited or the Report of Sale indicates a deficiency, the appearance will be appropriately marked. In the event that no Report of Sale has been filed, but there are motions pending, the Clerk will adjourn the case to a date beyond the motion return date in the IAS Part. If a Report of Sale has not been filed and no motions are pending, the case will be adjourned to the IAS Judge for further proceedings, as necessary, and the Referee shall be notified.

4

[* 11]

## 9th Judicial District - Foreclosure Auction Plan

### Remote Bidding Addendum
### FOR ROCKLAND COUNTY ONLY

- Pursuant to Administrative Order 54/24, remote bidding has been authorized for Rockland County. However, all auctions, even remote-eligible auctions, will still take place in-person, at the location designated herein, and will still be conducted and supervised by the Referee.

- Plaintiff may retain the services of a remote bidding technology provider for those properties scheduled to be auctioned on or after 5/20/24.

- Remote bidding will be available for properties where the foreclosing party has engaged such a remote bidding technology provider to provide marketing and auction services. In those cases where a remote bidding provider has been retained, a representative thereof will appear at the courthouse for the auction and shall be permitted to use an electronic tablet to collect, verify, and relay bids in real time during the auction.

- Where a plaintiff seeks to retain a remote bidding technology provider, the proposed judgment of foreclosure and sale shall make the necessary references to remote bidding as set forth more fully in the UCS' Judgment of Foreclosure and Sale Template for Remote Bidding or as otherwise ordered by the court. No remote-bidding eligible auction may take place unless authorized by the Judgment of Foreclosure and Sale.

- If remote bidding is authorized by the court, when seeking to schedule a remote-bidding eligible auction (via email to RocklandAuctions@NYCourts.gov), the Referee and/or plaintiff's representative must notify the court of their intention to retain a remote bidding technology provider.

- After a remote-bidding eligible auction has been completed, if the highest bid is from a remote bidder, the Referee shall defer collection of a deposit so long as the remote bidding provider provides proof of sufficient funds thereof. This proof of funds can be in the form of a winning remote bidder's escrow account statement as of the date of the auction. The deposit MUST then be transferred into the Referee's trust account within one (1) business day of the conclusion of the auction. The Referee shall make available their wire transfer information to the remote bidding provider for this purpose.

- After an auction has been completed, if the highest bid is from a remote bidder, the remote bidding provider shall assist in facilitating the winning bidder's execution of all required documentation.

[* 12]